JOHN DILLON, Respondent, v. ABSALOM L. ANDERSON, Appellant.

A contract executed between two parties, and in the body of which a third person is also named as a party, who does not join in the execution of it, is nevertheless, on its face good, as against the parties executing it, and it rests upon either party denying its validity, to show that he was not to be bound by it, until it was also executed by such third person.

It must appear that at the time the contract was entered into, the party expressly declared his intention not to be bound by it until it was executed by the third person, or he cannot afterward set up the fact that the contract was not executed by such third person as an objection to its validity against himself. In such case, a party testifying in his own behalf, cannot swear whether or not it was his intent to make an individual contract.

Where, after a contract has been entered into between two parties, notice is given by one of them that the contract is rescinded on his part, he is liable for such damages and loss only as the other party has suffered by reason of such rescinding of the contract, and it is the duty of such other party upon receiving such notice, to save the former as far as it is in his power, all further damages though the performance of this duty may call for affirmative action on his part.

When notice of the rescinding of a contract is given to such an agent or employe of one of the parties as is authorized to stand in his place and represent him in his business, or in the particular branch of it connected with the subject-matter of the contract, it is sufficient, though such notice is not brought home to the party himself.

(Cause argued December 14th, 1870; decided December 20th, 1870.)

Appeal from a judgment entered at the General Term in the third judicial district in favor of the plaintiff upon a verdict rendered at the Ulster Circuit, subject to the opinion of the court at General Term.

This action was brought to recover damages for breach of a contract, claimed to have been entered into by the defendant with the plaintiff, for the construction of a pair of boilers for the steamboat Mary Powell, on the 11th day of September, 1865. The answer sets up, that the contract was made with the defendant and one John L. Hasbrouck jointly, and that Hasbrouck is a necessary party. Also, that the defendant, after the contract was made rescinded it, and offered to pay damages.

On the trial the plaintiff introduced an instrument in writing containing the terms of his contract, which was signed by the plaintiff and defendant. Hasbrouck was named in the body of it as one of the contracting parties, but did not sign it.

The plaintiff proved that the contract was made between him and the defendant alone. That Hasbrouck's name had been inserted with the intention of having him sign, but that he never had signed, and offered evidence to show that plaintiff had waived Hasbrouck's joining in the contract. Plaintiff also proved, that the defendant had had a clause inserted in the contract, that the plaintiff should proceed under it

immediately, and the plaintiff at once caused the work to be commenced.

It was also so far proved, that the defendant recognized the contract as valid and complete, as that he offered to pay the plaintiff damages for the breach.

Upon this evidence the defendant moved for a nonsuit, on the ground that Hasbrouck was not joined as a party defendant with him, but the court refused and left the question to the jury, whether the parties did not finally make a contract between themselves, and instructing them that if they were satisfied from the evidence, that the agreement was not to take effect until it was signed by Hasbrouck, and that without his signature there was no intention to create a personal liability on the part of the defendant, then the plaintiff could not recover.

After work had been commenced under the contract, and a certain amount of material had been purchased therefor by the plaintiff, notice was given by the defendant to stop work, and also notice that the contract was rescinded by the defendant, and that the defendant would make the plaintiff whole for any loss he might suffer.

This was given to one Brodie, the plaintiff's boiler-maker on September 15, and also to Ealls, · his book-keeper, on September 16, and the directions were communicated to the plaintiff on his return home on September 19; and on the same day the plaintiff was seen by the defendant, who told him that the boat had been sold, and that they did not want the boilers, and offered to pay him damages; but the plaintiff refused to stop, and proceeded with the work. On September 18 an order was made out and sent to Corning & Co. for boiler iron, which was received and used by the plaintiff in the construction of the boilers.

The defendant refused to pay certain sums of money which came due under the contract, and the action was brought to recover those amounts, and also damages for the breach.

On the trial, it was insisted by the defendant and held by the court, that the defendant had a right to revoke the con-

tract after it was made, and that having done so the plaintiff's damages were limited to his loss by the rescission. The court also charged that the jury were to determine from the evidence when the defendant gave notice to the plaintiff of his intention to rescind the contract; and also further charged, that notice given to the employes of the plaintiff must have been brought to the knowledge of the plaintiff, and that if the iron was ordered on the 18th of September, and was received on that day, the defendant would be chargeable with the loss. on the iron so ordered

A verdict for $5,700 was rendered by the jury for the plaintiff, whereupon the defendant moved for a new trial, which was denied; and it was ordered that a case be made, to be heard in the first instance at the General Term, and that in the mean time judgment be stayed.

Judgment for the plaintiff was ordered at the General Term, and an appeal was taken therefrom to this court.

*M. Schoonmaker*, for the appellant, cited *Seymour* v. *Wilson* (14 N. Y., 565); *Griffin* v. *Marquardt* (21 N. Y., 121); *Forbes* v. *Waller* (25 N. Y., 430–439); *Bedell* v. *Chase* (34 N. Y., 386).

*Samuel Hand*, for the respondent, that the question as to completeness of the contract was one of intent for the jury: *Parker* v. *Bradley*, 2 Hill, 584; *Couteau* v. *Suydam*, 21 N. Y., 179; *Jerome* v. *Jerome*, 18 Barb., 21; *Renard* v. *Fuller*, 4 Bosw., 107; *Scott* v. *Whippel*, 5 Greenl., 336; *Cutler* v. *Whittimore*, 10 Mass., 442. Also citing *Hawks* v. *Munger* (2 Hill, 200); *Bank* v. *Dakin* (34 Wend., 411). On question of damages: Sedgwick on Damages, 251, 4th ed.; *Underhill* v. *Gas-light Co.* (31 How., 37); *Masterston* v. *Brooklyn* (7 Hill. 62); *Griffin* v. *Colver* (16 N. Y.)

FOLGER, J. 1st. The motion for a nonsuit was properly denied. The action was upon a contract in writing. It was signed by the plaintiff and defendant, and by no one else.

It was signed in duplicate, and delivery made by each to the other. It showed them the only contracting parties. The fact that in the body of the instrument Hasbrouck, who did not execute it, was named as a joint contractor with Anderson, did not prevent it from having effect against Anderson. (*Parker* v. *Bradley*, 2 Hill, 584.) *Prima facie*, it was the contract of Dillon and Anderson. And the onus was on Anderson, to show that he was not bound as the party of the second part, by his execution of it, until it was also executed by Hasbrouck. The testimony that was given to that end was not so positive as to warrant the judge at the circuit in taking the question from the jury. It was shown that Anderson assisted in the drafting of it; that he inserted in it the material clause binding Dillon to proceed immediately with the work; that he made delivery of it to Dillon; that when the execution of it by Hasbrouck also was mentioned, Dillon expressed himself satisfied with it as it was, and that he did not care for Hasbrouck's signature, from which Anderson made no dissent; that the presence of Hasbrouck was expected at the place where the contract was executed, and that it was not executed until it was known that he would not be there; that Anderson affixed no condition or qualification to his delivery of the contract, and no effort is shown to have been subsequently made to procure the execution of the contract by Hasbrouck. There was no testimony sufficient to so completely outweigh the *prima facie* effect of the instrument, and that above detailed, as to make it a question of law for the judge on undisputed or clearly proven facts. And he made no error against the defendant in submitting it to the jury, as he did, to find whether the defendant made the contract in question with the plaintiff, intending to, and actually making himself individually liable to the plaintiff for the work. Indeed, if Anderson meant not to be bound by the contract, he should have accompanied the delivery of it with an expression of such intention. If he executed it generally, without such declaration, he was holden though he stood alone. (2 Hill, *supra*.)

2d. The defendant being a witness in his own behalf, was asked by his counsel : " Did you *intend* to make an individual contract ?" which question was overruled by the court. It called for his purpose mentally formed, but undisclosed, to the plaintiff. It sought to annul, by an intention not expressed, words and acts relied upon by the plaintiff, by which he was influenced, and which of themselves were *prima facie* evidence of an agreement. An agreement is said to be the meeting of minds of the parties. But minds cannot meet when one keeps to itself what it means to do, nor can one party know that the other does not assent to a contract, the terms of which have been discussed and settled between them, unless dissent is made known. Here was the oral bargaining going before the written contract. Here was the written contract signed and delivered without qualification of the act of delivery, without the expression of the intention called for by the question that the act of delivery was not to be taken as meaning all it seemed to mean. The testimony called for was not proper. There are authorities that a witness may be asked his motive or intent in doing an act. (See *McKown* v. *Hunter*, 30 N. Y., 625 ; *Thurston* v. *Cornell*, 38 N. Y., 281 ; *Bedell* v. *Chase*, 34 N. Y., 386.) We think that they hold no more than this : That where the doing of the act is not disputed, but is affirmed, and whether the act shall be held valid or invalid, hangs upon the intent with which it was done, which intent from its nature would be formed and held without avowal ; there he upon whom the intent is charged may testify whether he secretly held such intent when he did the act. Thus an insolvent assignor in trust, charged with the fraudulent intent to hinder and delay creditors, may be called in support of the deed of trust, and may say whether, when he made it, he had no fraudulent purpose. And one sued for a malicious prosecution, may testify that in setting on foot the legal proceedings, he believed that there was cause for them. And, as an extreme case, which we are not willing to extend, one against whom the defence of usury has been set up, has been

permitted to testify what was the intention in stipulating for a sum reserved out of the face of a note. But that an act should be held to have or not to have effect, and one party to it, to be bound or not as the other party to it should, by his undisclosed purpose, have determined, is warranted by no sound principle.

3d. The defendant, by notice to the plaintiff, stopped the work under the contract soon after it was begun. He thereby incurred a liability to the plaintiff for the damages sustained by him. The judge, in general terms, charged the jury, that these damages were such sum as would be an indemnity for the actual loss sustained. It has been laid down that in an action brought upon an agreement, full performance of which has been prevented by the defendant, the damages of the plaintiff are such profits as he would have made had the contract been fully carried out. (*Clark* v. *The Mayor*, 4 Comst., 338; *P. W. and B. R. R.* v. *Howard*, 13 How. U. S., 307, 44; and see *Messmore* v. *N. Y. Shot Co.*, 40 N. Y., 422, 7.) But in many cases, as in this, materials for the performance of the contract may have been got, and labor expended in good faith before the notice to stop has been given, and the materials, by the labor put upon them for a particular purpose, may have been depreciated in value for general purposes. It is manifest that the plaintiff cannot be fully indemnified in such case without he is repaid for such labor and for any loss sustained upon such materials. (*Hosmer* v. *Wilson*, 7 Mich., 294.)

We understand from the course of the trial, from the charge of the judge, and the verdict of the jury, that these rules were substantially adopted below. It became very material then, to ascertain just when the notice to stop the work was given. For it was the duty of the plaintiff, as soon as due notice was given, to have so acted as to save the defendant from further damage, so far as it was in his power. And the performance of this duty called for affirmative action on his part. (*Hamilton* v. *McPherson*, 28 N. Y., 72.) And in this view, the counsel for the defendant called upon the judge

to charge the jury that notice of intention to rescind, given to the employes of the plaintiff, was sufficient. The judge declined, and counsel excepted. But the judge did charge the jury that to be effectual, the notice must be brought to the knowledge of the plaintiff. To which there was exception. Understanding this request to refer to the notice which it is claimed the testimony shows to have been given to the foreman in the boiler shop, and the book-keeper of the plaintiff, and understanding the charge to mean the personal knowledge of the plaintiff, we think that in the charge error was committed. A notice which should not come to the personal knowledge of the plaintiff might be sufficient. If given to such agent or employe, as was authorized to stand in the place of and represent the plaintiff in his business, or in the particular branch of it connected with the subject-matter of the contract, it would be sufficient. Notice to the agent, is notice to the principal, if the agent comes to the knowledge of the fact while he is acting for the principal in the course of the very transaction, which becomes the subject of the suit. (*Bank of U. S.* v. *Davis*, 2 Hill, 451–61.) The testimony certainly tended to show that Brodie was the direct agent of the plaintiff, in the making of these boilers, that he went to Albany as such, and selected some of the iron for them, and assisted in completing the purchase of the rest. And it also tended to show that before he had furnished the memoranda for ordering the iron, he was notified to stop the work under the contract. So the testimony tended to show, that Eales was the book-keeper of the plaintiff, and from memoranda furnished by Brodie on the 18th of September, made and sent the written orders on Corning & Co., for the iron, and that before these orders were dispatched, and as early as the 15th or 16th of September, notice was given to him to stop the work. It should have been given to the jury to find, whether Brodie and Eales held such relation to the plaintiff and to the subject-matter of this contract, as brought them within the rule above laid down, and whether notice of abandonment of the contract was given to them or to either

of them, and when it was given.  The request to charge asked
for this.  And the refusal and the instruction given, taken
in connection with another part of the charge, which was
duly excepted to, probably worked injury to the defendant.
For the court then charged that, if it was true that the
iron was ordered on the eighteenth, and the iron was received,
the defendant would be chargeable with the loss thereon, and
the plaintiff entitled to recover such loss.  The court here
proceeded on the ground, that the notice did not come to the
personal knowledge of the plaintiff until after the eighteenth,
and that any notice to Brodie and Ealls was of no avail;
which, as we have stated, was a question for the jury.  The
court thus presented to the jury, as an item of the plaintiff's
damages, his loss on iron ordered after a date, on which the
jury might have found that notice had been given to stop
the work.  This is not the only feature of this part of the
charge, however.  The instruction is, that the defendant is
liable for the loss on that iron.  The testimony shows that
by far the greater bulk of the iron was ordered on the
eighteenth, after the notice is claimed to have been given to
the employes.  And it becomes important to know how that
loss is made up in the testimony.  That loss must have been
an important part of the damages found by the jury.  Full
two-thirds of the iron was delivered on the order of the
eighteenth.  Testimony was given as to the loss per pound
on this iron, not only from its being ordered of a particular
size, for these particular boilers, and hence not adapted for
boiler making generally, but from the *wastage of it*, in the
punching, chipping and cutting in the process of their manu-
facture, and this wastage was put as high as five per cent of
the whole weight of the boilers.  The witness, Cowell, puts
the wastage on these boilers at 10,000 pounds, half of which
might be used for other purposes, leaving the actual wastage
five per cent.

But there could have been no wastage *had it not been
worked up after the notice*, and the plaintiff had no right
after notice, to work upon it to the damage of the defendant.

If the jury, in making up their verdict, allowed this item to the plaintiff, it was a wrong to the defendant. And they must have done so, if they followed the charge. It is plain that the verdict is not restricted to the profits which the plaintiff might have made. In part, it is more than probable, it consists of this wastage, and for that it is erroneous, and the error was the result of the direction by the court. There are other questions raised upon exceptions, to refusals to charge, which it is not necessary to express opinion upon.

The judgment of the General Term should be reversed, and a new trial ordered, with costs to abide the event.

All the judges concurring in reversal, except PECKHAM, who did not sit. Judgment reversed and new trial ordered.