IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1873.

---

### DUDLEY S. GREGORY, JR., ADS. ROBERT WILSON.

A broker procured a customer for another broker, with the understanding that the latter should charge for the procuring a loan of money at a rate prohibited by the statute, and that such commissions should be divided; *held*, that a suit would not lie in behalf of the former broker for his share of such commissions against the latter broker, to whom they had been paid by the customer.

---

On rule to show cause why verdict should not be set aside.

The verdict was based on the following conclusions of fact: That each of the parties was doing a separate business in Jersey City, as brokers in real estate and in the procuring of loans for money.

That there was an arrangement between them that for any customer furnished by plaintiff to defendant, for whom the defendant should procure a loan, the commissions should be equally divided.

That in accordance with such arrangement, the defendant, in 1870, procured a loan of $28,000, for one year, for Thomas

Edmonston, at six per cent. commission, and which commission was paid by Edmonston to defendant when the money was received by Edmonston.

That Edmonston was a customer furnished by the plaintiff to defendant, and the plaintiff is entitled to recover one-half of said commissions, unless prevented by reason of section five of the act against usury. The verdict was for one-half of the commissions, for which the suit was brought.

The plaintiff knew when he furnished the customer, that the commissions would be at least six per cent. on the amount of the loan.

The following question was certified for the advisory opinion of this court—

Whether, by reason of section five of the usury act, the verdict can be sustained in whole or in part?

Argued at June Term, 1873, before BEASLEY, Chief Justice, and Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the plaintiff, *E. T. Cowles.*

For the defendant, *J. Dixon.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. I think it is not to be denied that the money, which is the subject of the present suit, is the proceeds of an illegal transaction. The fifth section of the act against usury denounces a penalty against every broker who shall take or receive more than the rate or value of fifty cents for procuring the loan or forbearance of one hundred dollars for a year. In the present affair six per cent. premium was taken from the borrower by the defendant, with the knowledge and co-operation of the plaintiff. It is not, at this day, open to any question that a provision in a statute declaring that the doing of an act shall be visited by a prescribed penalty, is equivalent to an announcement that such act, if done, shall be illegal; so that if the borrower, in this

case had refused to pay the unlawful commissions agreed upon, no action could possibly have lain against him for such default. But this action is bottomed on the proposition that, inasmuch as the money has come to the hands of the defendant, and the plaintiff is entitled to one-half of it, the original transaction, out of which it arose, cannot be gone into, or at all events, cannot affect the claim in suit.

It is the general rule of the law, always admitted whenever the subject has been discussed, that a court of justice will not lend its aid to the enforcement of a contract, the making of which is prohibited, or which is directed to the accomplishment of any unlawful purpose. But while this salutary principle is thus broadly stated, there are some cases, and of the highest authority, which it is difficult not to regard as violations of its spirit. These decisions, as a class, are not harmonious, and some of the earlier of them have, on several occasions, undergone a severity of judicial criticism, which approaches closely to a dissent from the doctrines which they seek to establish. Each of such cases, however, claims to stand on some ground that makes it an exception to the general rule. First among these is *Tenant* v. *Elliott*, reported in 1 *Bosanquet & Puller*, *p.* 3. The defendant was a broker, and had effected an illegal insurance for the plaintiff, and the ship thus insured having been lost, he received the amount of the insurance from the underwriters. Having refused to pay it over on demand, to the plaintiff, the suit was brought, which was successful, Eyre, Chief Justice, saying: "The question is, whether he who has received money to another's use on an illegal contract, can be allowed to retain it, and that not even at the desire of those who paid it to him? I think he cannot." The same rule of decision was applied in *Farmer* v. *Russell et al.*, 1 *B. & P.* 296, where the fund sought to be recovered, and which was outstanding in the hands of a third party, was the product of an act which was indictable and highly criminal. The suit was against a carrier, who had carried counterfeit coin for the plaintiff, and having received pay for it from the consignee, refused to hand it over. The

court thought the case could not be distinguished from the antecedent one, which I have cited, and considered the sum claimed as so much money had and received by the carrier for the plaintiff, and that the original transaction did not affect the rights of such parties. These cases were founded on the theory that when the proceeds of an illegal, or what is the same thing, a criminal act, had passed into the possession of a third party, as an agent for the transfer of the money to the person for whom it was deposited, the contract implied by law that such money would be paid according to instructions, was so disconnected with the original transaction as to be unvitiated by it.

And some of the decisions have pushed this doctrine even beyond this limit, for it has been held that in cases where there has been a partnership in a business carried on in violation of the provisions of a statute, such illegality will not bar a recovery by one partner against the other in a bill for an account of the gains of such traffic. Such were the views of Lord Cottenham in *Sharp* v. *Taylor*, 2 *Phillips* 801. In support of the principle on which the judgment in this decision was rested, the only authorities cited were those already named, of Tenant *v.* Elliott, and Farmer *v.* Russell, and it is certainly clear that these cases do not support, to the whole extent, the doctrine for which they were vouched. The cases cited held that when the illegal transaction was completed, and the gains had been deposited with a third party in the course of transfer, the law would compel a payment by such intermediate agent; in advance of this, Lord Cottenham maintained that in case the illicit funds remained in the hands of one of the wrong doers, the other could enforce his right to a division. The broad ground is laid and the case decided upon it, that there is a " difference between enforcing illegal contracts and asserting title to money which has arisen from them." And this view of the law has received the sanction of high judicial authority in this country. The doctrine of the last cited case was approved of by the Supreme Court of the United States in *McBlair* v. *Gibbes*, 17

*How.* 232, and was signally enforced if not considerably transcended, by the same tribunal in *Brooks* v. *Martin,* 2 *Wallace* 70. In New York the adjucations are in the same vein. *Woodworth* v. *Bennett,* 43 *N. Y.* 237, and *Merritt* v. *Millard,* 4 *Keyes* 208, and vouchers for the proposition that where money derived from any illegal contract has been placed with a depositary for one of the parties to it, such contract having been fully executed, an action to recover such money by the party for whom it was left, will be sustained.

This subject has, likewise, quite recently, been considered by the Vice-Chancellor, in the case of *Watson* v. *Murray,* 8 *C. E. Green* 257. The bill was for an account with respect to the business of the carrying on certain lotteries in which the complaint alleged he was a partner. It appeared in the pleadings that the lotteries were drawn and the business was transacted in states where such doings were lawful. It was not shown whether the contract of partnership was entered into in this state or elsewhere. The bill was dismissed on demurrer, on the ground that as lotteries were in hostility to the general policy of this state, and were in themselves immoral, our courts would not take such affairs under their protection, although they were legal in the place where they had been transacted. In the course of his review of the subject, the Vice-Chancellor, as I interpret his remarks, exhibits a decided disapprobation of the extravagant length to which some of the decisions had gone in furtherance of illegal transactions.

But it thus appears that there is authority entitled to the very highest consideration in favor of the doctrine, that in cases where an illegal thing has been completely done, and the money growing out of such transaction being due to two or more persons, has been received by one of them for himself and his associates, or by a third person for such wrong doers, an action will lie for such money in behalf of the party to whom it is coming, either in whole or in part. The principle seems to be that such right of action will arise when

Gregory ads. Wilson.

the circumstances are such, that the fund in question can be regarded as money received for the benefit of the party bringing the suit.

Now, it appears to me evident that this is extending the rule to the very verge of impolicy. When the avails of a criminal transaction are passed over by the court from the hands of a depositary of them, as in the case of Farmer *v.* Russell, already cited, it is difficult to shake off an uncomfortable impression that the law has given the last touch to the vicious transaction. Nor is the suggestion made in some of the opinions very re-assuring or satisfactory, that in these cases the transaction alleged to be illegal is completed and closed, and is not in any manner to be affected by what the court is asked to do between the parties, because it is impossible to overlook the circumstance, that if the law lends its aid to the transmission of the gains of the misdeed, the doing of the offence is facilitated in the future. Until the money, which is the wages of the ill-doing, has come into the hands of the several delinquents, the illegal transaction, so far as they are concerned, is not closed, and unless the matter has been entirely concluded by such adjudications that it would be but captiousness to dissent from them, it might well be worth consideration, whether it would not be more consistent with the usual course of the law, and more protective of public interest, to proclaim the outlawry of such affairs from the first step to the last. If A and B make sale of forged paper, and the proceeds are paid by the purchaser to A, a court of law can scarcely be said to perform either a very respectable or a useful function when it assists B in obtaining his share of the profits of the business. Nor would it seem that it should give much concern to those who dispense public justice if one of two such delinquents should be successful in fraudulently withholding from his companion a share of the wages of the iniquity. Under such conditions the assistance of the law might, it would seem, be rightfully refused, not for the sake of the party who thus cheated his associate in guilt, but in order to render such affairs as pre-

carious and difficult as possible to those who might be inclined to enter upon them.

But it does not seem important to follow this line of inquiry to a conclusion, inasmuch as such course is not essential to an adjudication of the question now before this court. The rule is certainly not to be carried beyond its scope, as defined in the decisions referred to, and that rule, comprehensive as it is, will not embrace the facts of the present case. The distinction is, that in this instance no money has been paid over, either to a partner of the plaintiff, or to a third party for him. Under the circumstances now presented, it is impossible to say that the defendant has moneys in his hands, which were paid to him, either in whole or in part for the plaintiff. These parties were not partners, for if they were, this suit would not lie, but the remedy would be in a court of equity. The defendant solely earned this money, by obtaining the loan in question, and the commissions were paid to him in his own individual right. The money he thus received was his own. The effect of his contract with the plaintiff was to make him indebted to him in the amount of one-half of the money thus earned by him. He is thus a debtor to the plaintiff, but he is such exclusively by force of his agreement with him. Now, the difficulty in the way of a recovery in this action is, that this agreement is illegal and void. The plaintiff knew that more than the legal rate would be charged by the defendant to the customer whom he produced, and the contract, therefore, was, that the defendant should charge the illegal rate, and would pay to the plaintiff one-half of these forbidden gains. The consequence is, the plaintiff relies on this contract, and is asking for its enforcement. No case has gone to such a length, but, to the contrary, the courts have distinctly refused so to do. In point of principle, the case of *Van Doren* v. *Staats*, decided in this court, and reported in *Pennington, p.* 887, is exactly applicable. The defendant was the holder of a lottery ticket, and agreed, for a sufficient consideration, to give the plaintiff a definite interest in it. To deal in such inter-

est, was prohibited by a law of this state. A prize was drawn, and a suit was to compel the defendant to pay to the plaintiff his stipulated share in it. The argument was pressed, as it has been on this occasion, that the sum sued for was money received by the one party for the other, and that, therefore, the implied agreement, which formed the ground of the action, was removed from the original illegal transaction. But this argument did not prevail. The court saying, "the learned counsel for the plaintiff has very ingeniously endeavored to bring his client's case within the principle of those cases, by contending that the defendant received the money as agent for the plaintiff. But I think that this is not the correct interpretation of the transaction. The plaintiff was not known to the lottery company; he was no member of it. The agent of that company would not have been justifiable in paying any part of the money to him. If there was any agreement at all, it was this, that the plaintiff paid to the defendant $3.50, on an agreement between them that the defendant should pay to him one-third of the money that he should receive on that adventure; and this action is brought to enforce the fulfilment of that agreement. This agreement was in itself illegal, made in contravention of a statute of the state, and, in my opinion, the court cannot, with legal propriety, sustain the action." It is obvious that this precedent is so apt to the present purpose, that it would be necessary to disown its authority in order to clear the ground for a decision in favor of the plaintiff. I regard this adjudication as founded in a clear exposition, and accurate application of the correct rule of the law. This authority is in entire accord with the case of *Belden* v. *Pitken*, 2 *Caines' R.* 147. The defendant was possessed of a title to real estate belonging to a class, the sale of which was prohibited by law. The plaintiff procured a purchaser, under an agreement that he was to have a certain share of the proceeds, and the money was paid to the defendant, and the suit was brought to enforce the plaintiff's right to a share of this sum. But the court said: "In the present case, the object and

consequence of the agreement was the sale of the pretended title. This being illegal, the promise to divide the spoil was of course illegal, and not to be enforced. All contracts that have a fraudulent object in view, are void both at law and in equity."

Other cases having the same bearing might be cited, but in these days, when legal knowledge is so dearly acquired, and legal learning is so cheaply displayed, a voluminous citation of authorities is apt to look like a petit larceny on the digests.

The defendant is entitled to judgment, and the court should be so instructed.

CITED in *Todd* v. *Rafferty's Admrs'*, 3 *Stew. Eq.* 254.