WILLIAM BROADHEAD, PLAINTIFF, *v.* THE LYCOMING FIRE INSURANCE COMPANY OF MUNCY, PENN., DEFENDANT.

*Fire insurance company — when it is estopped by the knowledge of its agent from avoiding a policy for a breach of its conditions — such knowledge need not be acquired at the time of his issuing the policy.*

In this action, brought by the plaintiff upon a policy of insurance against fire issued by the defendant, the latter set up as a defense a breach of a condition, avoiding it in case the interest of the insured was not truly stated and described in the policy. Upon the trial it appeared that the policy in question was issued to the plaintiff by the general agent of the company in renewal and continuance of one previously issued by the defendant and which had been assigned to the plaintiff, and that at the time of such assignment the said general agent, with full knowledge and information of the plaintiff's title to and interest in the property, had by an indorsement upon the policy made the loss payable to the plaintiff as his interest might appear. At the expiration of the first policy, the agent having called on the plaintiff and been informed that he wished it to be continued, issued the one in suit, which was not examined by the plaintiff when delivered to him.

*Held,* that the knowledge of the agent, acquired while acting for the company in reference to the insurance of the same property, was the knowledge of the company.

That the fact that such knowledge was acquired by the agent prior to the time when he issued the policy in question was immaterial.

That the company was estopped from insisting upon the breach of the said condition as a defense to the action.

MOTION by the defendant for a new trial on exceptions taken at the Chautauqua Circuit, and ordered to be heard at the General Term in the first instance.

*C. R. Lockwood,* for the plaintiff.

*W. F. Cogswell,* for the defendant.

SMITH, J.:

This action is upon a policy of insurance against loss or damage by fire, issued by the defendant to the plaintiff on property described in the policy as the "factory building in the village of Jamestown, occupied as a planing-mill and for general manufacturing business, the machinery, etc., therein, and his stock of lumber therein." The amount insured was $333 on the building, the like sum on the machinery, and $168 on the lumber. The lumber was described as the plaintiff's, but the building and machinery were not described as the property of any person. The defense was predicated upon certain provisions of the policy which declared the policy void in case the interest of the assured in the property, as owner or otherwise, was not truly stated in the policy; and also in case such interest, if any, other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, was not so represented to the company, and so expressed in the written part of the policy. The date of the policy was 2d January, 1875. It appeared at the trial that on 5th September, 1874, one Morse, who held land contracts for the premises on which the building was situated, assigned the contracts to the plaintiff and executed to him a chattel mortgage upon the machinery as security for certain liabilities which the plaintiff had assumed as surety for Morse. On 9th December, 1874, Morse executed to the plaintiff a general assignment of all his property, real and personal, for the benefit of his creditors. The plaintiff had not foreclosed the mortgage, and in the inventory filed in connection with the assignment, all the mortgaged property was included, except the lumber. But a small part of the purchase-money had been paid upon the land contracts, and

no deed had been given. The plaintiff took possession of the assigned property under the general assignment, and held it down to the time of the fire. He owned the lumber absolutely, and he had paid several thousand dollars on his liabilities for Morse. It also appeared that Smith & Cady were the agents of the defendant at Jamestown, and that on 20th January, 1874, as such agents, they issued a policy upon the same property to Wood & Morse for one year. In September, 1874, when the land contracts were assigned to the plaintiff, that policy was transferred to him, and by an indorsement made thereon two days thereafter by the agents, Smith & Cady, the loss was made payable to the plaintiff as his interest might appear. At the expiration of that policy, the policy in suit was issued, Smith, the agent having previously called on the plaintiff and inquired whether he wished the policy continued, and having been told that he did. The policy was not examined by the plaintiff when it was delivered to him. By the terms of the first policy, when issued, the loss was made payable to one Allen as his interest might appear. The policy was intended to secure Allen for certain liabilities as surety for Wood, or his firm. Those liabilities were afterwards assumed by the plaintiff and Allen was released. Wood, the partner of Morse, testified that at or before the time when the first policy was issued, and after he had applied to Smith, the agent, for insurance, he told Smith that the contracts for the land on which the building stood had been assigned to Allen to secure him for indorsing, and that Allen wanted the insurance for his benefit as further security. Morse testified that after he made the transfer to the plaintiff, in September, 1874, he told Smith that he had transferred his interest in the shop and real estate, and assigned his contracts to the plaintiff, and wished to have the policies transferred to him as his interest might appear, and he thought he so told him at the time when the transfer was made, but he was not positive as to the time. The defendant gave testimony controverting that above stated. It appears to have been conceded that the plaintiff was entitled to recover, for the value of the lumber, $168.

The court charged the jury, in substance, that if the defendant's agent knew, at the time when the policy in question was issued, that the title which Morse, the plaintiff's assignor, had to the land on which the building stood was only by virtue of the contracts,

the verdict should be increased by the sum of $333 and interest. He also charged that if the agent knew at such time that Morse had executed to the plaintiff a general assignment for the benefit of creditors, the verdict should be still further increased by the sum of $209.48 and interest. The defendant's counsel excepted to each of those instructions, and requested the court to charge that knowledge of the agent of the company, which was not acquired in connection with the application for the policy in suit, was not knowledge that affected the liability of the defendant. He also asked the court to charge that any notice of the condition of the title to the property given by Wood to defendant's agent, or any knowledge derived from him in relation thereto, at the time referred to by Wood, was not such information or knowledge as would affect the policy in suit, or preclude the defendant from raising the defense of a breach of the condition as to the title expressed in the policy. Each request was denied, and the defendant's counsel excepted to each refusal.

The exceptions above stated present the principal question in the case. It is not claimed on the part of the plaintiff that any information as to the nature of the plaintiff's interest was communicated to the agent at the time when the policy in suit was applied for or issued, and the question is, whether the force of the conditions in the policy, invoked by the defendant, is avoided by the information on that subject previously communicated to such agent on occasions when he was engaged in the business of his principal, that business being the issuing and transferring of the first policy, the risks created by which was continued without interruption by the policy in suit.

In *Van Schoick* v. *Niagara Fire Insurance Co.* (68 N. Y., 434), cited by defendant's counsel, information as to the title to the property had been communicated to the agent before he issued the policy in suit, and, at the time of issuing the policy, the agent having such information, and with a view to the insurance in question, asked if there was any change in the property, and was told that there was not. "So that" (said FOLGER J., in his opinion, which was that of the court) "at the time of the issuing of this policy Lewis (the agent) was informed of the fact that this building was within the scope of this condition." The report of the case does not show

whether the agent originally acquired the information while acting for his principal. The case, therefore, is not exactly in point.

When the present case was before us on a former appeal (14 Hun, 452), evidence offered by the plaintiff to establish knowledge in the agent of the condition of the title and the rights of the plaintiff therein at the time when the policy was issued had been excluded, and on that ground a new trial was granted. Whether the appeal papers showed the precise nature of the evidence excluded I am not able to say, but the case was thought to be within the doctrine of *Van Schoick* v. *The Niagara Ins. Co.*, and was decided upon its authority; and, consequently, like that case, is not in point upon the present question.

If at the time the agent issued the policy in suit he knew the nature of the plaintiff's interest in the property, it would seem to be immaterial whether such knowledge was acquired by him at that time or at some previous time when he was acting as the agent of the defendant. It is the duty of an agent to communicate information thus acquired by him to his principal, and the presumption is that he has done so, and, therefore, his knowledge thus acquired is regarded in law as the knowledge of his principal. But information which comes to him when he is not engaged in the business of his principal does not affect the latter, for the reason that the agent is under no obligation to communicate it.

In some of the cases the rule is said to be that the principal is deemed to have notice of whatever is communicated to his agent while acting as such in *the transaction to which the communication relates.* (*Bank of the United States* v. *Davis*, 2 Hill, 451; *Dillon* v. *Anderson*, 43 N. Y., 231, 238.) Even if the rule is limited to communications relating to the transaction in hand at the time when they are made, the present case is within the rule, as the communications made to the agent had direct reference to the insurance applied for by Morse & Wood. Moreover, the policy issued to the plaintiff simply continued the insurance effected by the previous policy which had been transferred to the plaintiff with the defendant's knowledge and consent. It was, in effect, a renewal of the policy already held by the plaintiff, and in the course of the issuing and transferring of which the agent acquired his information. We think the rulings of the judge at the Circuit were correct.

The motion for a new trial should be denied and judgment ordered for the plaintiff on the verdict.

TALCOTT, P. J., and HARDIN, J., concurred.

So ordered.