GEORGE B. DAVIS, as Administrator, etc., of MARY E. JACOBS, Deceased, Respondent, v. GEORGE E. MARVINE, Appellant.

*Usury — proof by plaintiff as to his intent — proof as to the relations of the parties — severe expressions by the court.*

Where the doing of an act is not disputed, but is affirmed, and the question whether the act shall be held valid or invalid hangs upon the intent with which it was done, which intent, from its nature, could have been formed and held without avowal, he upon whom the intent is charged may testify whether he secretly held such intent when he did the act.

*Semble*, that in an action upon a note, in which the defense of usury is interposed, it is improper to permit the holder of the note, after her statement of the transaction between herself and the defendant, to answer the question whether she intended then and there to make any illegal and corrupt agreement with the defendant; nor should she (while claiming that the defendant acted as her agent in loaning the money to a third party) be permitted to testify that there was no intention upon her part to loan the money to the defendant; the question of intent in such case is one for the jury to determine.

In order to show the relations of the parties to an action, the inventory of the estate of the husband of the plaintiff is not competent in an action by her to recover her own money loaned to one who was the committee of the husband.

Severe expressions by the court, in an action in which the defense of usury has been interposed, in reference to certain receipts put in evidence by the defendant, prejudicial to his case and such as may have improperly affected the jury, may be considered by the appellate court; a defendant is entitled to a fair trial, although he has set up the defense of usury.

LANDON and HERRICK, JJ., dissented.

APPEAL by the defendant, George E. Marvine, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Delaware on the 16th day of April, 1895, upon the verdict of a jury rendered after a trial at the Delaware Circuit, and also from an order entered in said clerk's office on the 11th day of March, 1896, denying the defendant's motion for a new trial made upon a case containing exceptions.

The action was brought in the name of Mary E. Jacobs as plaintiff. Since the trial she has died and the administrator of her estate has been substituted as plaintiff.

*Wagner & Fisher,* for the appellant.

*Jerome I. Goodrich* and *George B. Davis,* for the respondent.

MERWIN, J.:

On August 25, 1888, the defendant executed and delivered to Mary E. Jacobs, plaintiff's intestate, his promissory note for $8,000, dated that day and payable to the order of Mrs. Jacobs four months from date at a specified bank with interest. On the 25th of August, 1889, a payment of $640 was made to Mrs. Jacobs, and like payments on August 25, 1890, August 25, 1891, August 28, 1892, August 28, 1893. In December, 1894, this action was commenced by Mrs. Jacobs to recover the balance unpaid on the note. In the complaint, the making of the note by defendant and its delivery to Mrs. Jacobs are alleged, and she is alleged to be still the owner and holder. The answer admits the making and delivery and the ownership by plaintiff, and sets up the defense of usury. The defendant claims there was an agreement on his part to pay, and on the part of Mrs. Jacobs to receive, interest at the rate of eight per cent.

Upon the facts the main question at the trial was whether there was any agreement on the part of defendant to pay eight per cent. On the part of the plaintiff it was claimed that the defendant received the money for the purpose of loaning it for plaintiff to a

manufacturing concern in Ohio at the rate of eight per cent, which was there legal, and that defendant's note was only as collateral security ; that there was no agreement by him individually to pay eight per cent, and that the payments by defendant were understood by Mrs. Jacobs to be sums received by the defendant from the foreign concern.

It was in effect found by the jury that there was no promise by the defendant to pay eight per cent. We find on the facts no good reason to disturb the verdict.

It is, however, claimed by the defendant that erroneous rulings on the admission of evidence were made by the court to his (defendant's) prejudice, and also that evidence, offered on the part of the defendant and received, was in the course of the trial so characterized by the court as to prejudice the jury against the defendant.

Upon the trial, Mrs. Jacobs, being called as a witness in her own behalf, and after stating what occurred between her and the defendant, was permitted, over the objection and exception of defendant, to answer the question : " Did you intend then and there to make an illegal and corrupt agreement with Mr. Marvine ? " Also, over like objection and exception, the question : " So there was no intention on your part to loan it to him ? "

By these questions the witness was permitted to testify to her undisclosed intent. The question whether the loan was to the defendant was a material one. The note and the receipts for the payments thereon indicated a loan to the defendant. The existence of such a contract did not depend on the undisclosed intent of either party. In *Dillon* v. *Anderson* (43 N. Y. 231) the question to a party defendant, " Did you intend to make an individual contract ? " was held to be improper. In that case it is said by Judge FOLGER, in delivering the opinion of the court (p. 236) : " There are authorities that a witness may be asked his motive or intent in doing an act. (See *McKown* v. *Hunter*, 30 N. Y. 625 ; *Thurston* v. *Cornell*, 38 id. 281 ; *Bedell* v. *Chase*, 34 id. 386.) We think that they hold no more than this : That where the doing of the act is not disputed, but is affirmed, and whether the act shall be held valid or invalid, hangs upon the intent with which it was done, which intent from its nature would be formed and held without avowal; there, he upon whom the intent is charged may testify whether he secretly held such intent

when he did the act. Thus, an insolvent assignor in trust, charged with the fraudulent intent to hinder and delay creditors, may be called in support of the deed of trust, and may say whether, when he made it, he had no fraudulent purpose. And one sued for a malicious prosecution may testify that, in setting on foot the legal proceedings, he believed that there was cause for them. And, as an extreme case, which we are not willing to extend, one against whom the defense of usury has been set up, has been permitted to testify what was the intention in stipulating for a sum reserved out of the face of a note. But that an act should be held to have or not to have effect, and one party to it, to be bound or not, as the other party to it should, by his undisclosed purpose, have determined, is warranted by no sound principle."

According to these views it was not competent for Mrs. Jacobs to testify, as she was in substance allowed to do, that she had no intention to loan the money to the defendant. By the ruling admitting this, the jury were allowed to infer that Mrs. Jacobs' undisclosed intention might control the case in her favor. In this view it cannot, I think, be fairly said that the ruling was not material. True, the jury might have inferred the same thing from the circumstances of the transaction as detailed by Mrs. Jacobs. There was, however, a flat contradiction on this subject between Mrs. Jacobs and the defendant. When, therefore, the jury were allowed to consider the undisclosed intention of Mrs. Jacobs as material on the subject, the court by its ruling emphasized its materiality, and it may well be said that the jury might have been by this improperly influenced to the prejudice of the defendant. We cannot, I think, say that they were not.

It is also at least doubtful whether it was competent to allow Mrs. Jacobs to testify that she did not intend to make an illegal or corrupt agreement with the defendant.

Considerable evidence was given at the trial for the purpose of showing the relations of the parties as reflecting upon the transaction in regard to the note. It was shown that defendant, some two years and upwards prior to the giving of the note, had been appointed the committee of the person and estate of Ferris Jacobs, Jr., the husband of the plaintiff. Thereupon the plaintiff was permitted to put in evidence the inventory of the estate of Mr. Jacobs, made by

the defendant as committee, and filed by him on September 15, 1886, which was after the death of Mr. Jacobs. This was duly objected to by the defendant, and exception taken to its admission. It is difficult to see how this inventory, made about two years before the transaction in controversy, had anything to do with the matter in controversy between the plaintiff and defendant. Assuming that it was proper to show that the defendant had charge of the estate of Mr. Jacobs, it does not follow that it was proper to show the amount or character of that estate. Such evidence was foreign to the issue involved, and might have a tendency to mislead the jury. The complaint was upon a contract directly between Mrs. Jacobs and the defendant. Her ownership was alleged, and admitted by the answer. There was evidence tending to show that the money for which the note was given, although there was nothing in the inventory about it, belonged to the estate of Mr. Jacobs; that he died in August, 1886, and that Mrs. Jacobs was soon after appointed administratrix of his estate. It is suggested on the part of the plaintiff that he is entitled to the benefit of the rule that the exacting of a bonus by an agent on the loan of money for his principal may not invalidate the claim of the principal. (*Fellows* v. *Longyor*, 91 N. Y. 324, 330.) The plaintiff is not, I think, in a position under the complaint to raise that question. Nor was the case tried upon any such theory. Under the pleadings, Mrs. Jacobs was the conceded owner of the note at its inception. The condition of her husband's estate, or the character of his property, was wholly immaterial. If the estate of Mr. Jacobs is to be deemed the principal, it is not a party to this action, and the rule involved does not apply here.

In ruling upon the admissibility of evidence in regard to the relations of the parties, the court, in commenting upon the receipts previously given in evidence by the defendant, used expressions which the defendant claims were prejudicial to his case with the jury. Quite severe expressions were used, such as may have improperly affected the jury. The complaint of the defendant in that regard seems to have some substantial basis. (*Hogan* v. *The Central Park, etc., R. R. Co.*, 124 N. Y. 647, 649.) He was entitled to a fair trial although the defense was usury.

Our attention is called to some other rulings, but it is not necessary to here consider them.

We are of the opinion that the defendant is entitled to a new trial.

PARKER, P. J., and PUTNAM, J., concurred; LANDON and HERRICK, JJ., dissented.

LANDON, J. (dissenting):

I dissent. The plaintiff's theory, which the jury by their verdict sustained, was that, wishing to invest money, she sought the advice of the defendant, and he undertook to invest it for her in Ohio securities at eight per cent, the lawful rate in that State, and that, until he could get the Ohio securities, he would take her money and give her his note for it, and secure it by bank stock. This he did, giving her the note in question, " with interest," and the certificates of bank stock as collateral; that the defendant soon after brought and delivered to her certificates of stock in Ohio corporations, representing these to be the securities in question, and that they would yield her eight per cent; that he took away the bank stock, still leaving his note with her as collateral. The Ohio stock that he delivered her was his own, and, we infer, was not valuable. He subsequently paid her eight per cent for several years. It was material to know whether this was a cover for usury, or whether the defendant imposed upon the plaintiff in the first instance, and led her to suppose that the eight per cent he was paying her was the proceeds of the Ohio stock. The intention of the parties was material. It was obscured by the circumstances, especially as they were sworn to by the defendant. It was, therefore, competent for the plaintiff to testify that she did not intend to loan her money to the defendant, or, no objection being taken to the form, to make an usurious agreement with him. *Dillon* v. *Anderson* (43 N. Y. 231) does not hold otherwise. There the contract actually made was in writing, and spoke for itself. There was there no charge of fraud (*Seymour* v. *Wilson*, 14 N. Y. 567); or malice (*McKown* v. *Hunter*, 30 id. 625); or usury (*Thurston* v. *Cornell*, 38 id. 281; *Bayliss* v. *Cockcroft*, 81 id. 363); or other crime in which the intent is the essential element, under investigation and in doubt, but simply the question whether a party was bound by the contract he had signed. The opinion admits usury to be an exception to the rule there applied, and in *Bayliss* v. *Cockcroft* (*supra*) it is said that the

authority of *Thurston* v. *Cornell* (*supra*) was not shaken in that respect by *Dillon* v. *Anderson* (*supra*).

As to the admission of the inventory of the estate of plaintiff's husband, made by the defendant, it was received to contradict defendant's testimony about his relations with the plaintiff and plaintiff's husband in his lifetime, the plaintiff's testimony having been to the effect that as he and her husband were intimate in their business and social relations, she naturally confided in him after her husband's death. As the case was presented, we cannot say that this was absolutely irrelevant. There were exceptions to other testimony alleged to be irrelevant. In nearly every trial some irrelevant testimony will creep in, and, unless we can see that its tendency was to prejudice the party objecting to it, we ought to assume that the trial judge thought it safer to admit it and trust to its inconsequence than to exclude it, and thus run the risk of error in overlooking some other testimony which might make it at least remotely relevant. I cite my observation and experience, not as authority for such practice, but as in harmony with it.

As to the "severe expressions" used by the trial judge, they were characterizations of the defendant's acts in obtaining damaging receipts for interest from the plaintiff, qualified with the proviso — if the plaintiff's version of the facts was true; but he also at the same time in effect said the receipts were fatal to plaintiff's case if defendant's version was true. His language was plain and emphatic, but it conveyed a clear, and I think à true idea of the situation, and we have no just occasion to reprehend it. Plain words from the court presenting the issue sharply and fairly are very helpful to the jury. Moreover, I think the judgment was right.

HERRICK, J., concurred.

Judgment and order reversed and a new trial granted, costs to abide the event.