GEORGE B. DAVIS, as Administrator of MARY E. JACOBS, Deceased, Appellant, v. GEORGE E. MARVINE, Respondent.

1. USURY — PROMISSORY NOTE — TESTIMONY OF PARTY AS TO INTENTION. Where, in an action upon a promissory note, defended on the ground of usury, the instrument is innocent and valid on its face, and it is only by resort to extrinsic facts and circumstances that it is invested with the elements of illegality, and such facts are capable of an innocent construction, the intention of the payee of the note in the transaction is a material element in determining whether the facts should be given that construction, and may be testified to by him.

2. TESTIMONY OF PARTY AS TO INNOCENT INTENTION IN ALLEGED USURIOUS TRANSACTION. In an action by the payee against the maker of a promissory note, reading " with interest," but not stating the rate, the defense was usury. The defendant, who was a banker, showed that he had credited the plaintiff annually with interest on the amount of the note at a rate forbidden in this state, and claimed that the note was for a loan to himself under an agreement for excessive interest. The plaintiff claimed that the note was given as security for a loan made by her through the defendant to parties in another state, where an agreement for interest at the rate in question was legal, and that she understood and believed that the interest credited to her was paid by the foreign borrowers. *Held*, that the plaintiff was properly permitted to testify that she did not intend to make an illegal and corrupt agreement with the defendant, or to make a loan to him.

*Davis* v. *Marvine*, 11 App. Div. 440, reversed.

(Argued June 20, 1899; decided October 3, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered December 9, 1896, reversing a judgment in favor of plaintiff entered upon a verdict and granting a new trial.

The action was brought by Mary E. Jacobs. She died after the trial, and her administrator was substituted as plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George B. Davis* and *Francis M. Finch* for appellant. The evidence of Mrs. Jacobs, that she did not intend to make a corrupt and unlawful agreement, or to loan her money to

the defendant, was properly admitted at the trial on the issue of usury, and the Appellate Division erred in regarding the admission of that evidence as ground of reversal. (*Baylis* v. *Cockcroft*, 81 N. Y. 363; *Reader* v. *Holcomb*, 105 Mass. 93; *White* v. *State*, 53 Ind. 595; *Watkins* v. *Wallace*, 19 Mich. 57; *Seymour* v. *Wilson*, 19 N. Y. 417; *Griffin* v. *Marquardt*, 21 N. Y. 121; *Forbes* v. *Waller*, 25 N. Y. 430; *Bedell* v. *Chase*, 34 N. Y. 386; *Thurston* v. *Cornell*, 38 N. Y. 281.) The trial judge committed no error in overruling a group of objections taken to the proof offered by plaintiff of the confidential relations, business and personal, existing between the parties prior to and at the time of the loan in question. The only error was in the Appellate Division, which made a ruling totally indefensible. (*Platner* v. *Platner*, 78 N. Y. 99; *People* v. *Tice*, 131 N. Y. 651.)

*E. D. Wagner* for respondent. The court erred in receiving the evidence that the mind of General Jacobs, the husband of the plaintiff, had become weakened. (*Erben* v. *Lorillard*, 19 N. Y. 299; *People* v. *Corey*, 148 N. Y. 489; *Anderson* v. *R., W. & O. R. R. Co.*, 54 N. Y. 334; *Hutchins* v. *Hutchins*, 98 N. Y. 56; *Baird* v. *Gillett*, 47 N. Y. 186; *Green* v. *Disbrow*, 56 N. Y. 334; *Neudecker* v. *Kohlberg*, 81 N. Y. 296; *O'Hagan* v. *Dillon*, 76 N. Y. 170; *People* v. *Koerner*, 154 N. Y. 376.) The court again erred in receiving in evidence the report made by the defendant as committee of the person and estate of Ferris Jacobs, Jr., and the affidavit annexed thereto. (*O'Hagan* v. *Dillon*, 76 N. Y. 170.) The remarks of the court made at the time the ruling complained of in the preceding point was made, had the effect to excite prejudice and hostility in the minds of the jurors towards the defendant. (*Hagan* v. *C. P., N. & E. R. R. R. Co.*, 124 N. Y. 647; *Hamilton* v. *T. A. R. R. Co.*, 53 N. Y. 25.) The court erred in overruling the defendant's objection to the following question put by the plaintiff's counsel to the plaintiff herself, when she was testifying as a witness in her own behalf: Now, Mrs. Jacobs, at the time the note was given,

did you intend then and there to make an illegal and corrupt agreement with Mr. Marvine? (*Dillon* v. *Anderson*, 43 N. Y. 231; *Anderson* v. *R., W. & O. R. R. Co.*, 54 N. Y. 334; *People* v. *Koerner*, 154 N. Y. 376.) The exceptions to the charge of the court are well taken and cause for the reversal ·of the judgment. (*Bank of Salina* v. *Alvord*, 31 N. Y. 473; *Fiedler* v. *Darrin*, 50 N. Y. 437.)

GRAY, J. The action is upon a promissory note; wherein the defendant, four months after date, promised to pay to Mary E. Jacobs, the plaintiff's intestate, the sum of $8,000, " with interest." The answer sets up the defense of usury. Upon the trial, it appeared from Mrs. Jacobs' evidence that, having received this money, upon a claim collected by her as administratrix of her deceased husband's estate, from the United States government, she informed the defendant; who was the president of·a bank in the town where she resided, and who, for many years, had been the intimate and confidential friend of her husband. When her husband, shortly before his death, had become demented, the defendant was appointed the committee of his person and property and when, upon his death, Mrs. Jacobs became administratrix of her husband's estate, the defendant was surety upon her bond. His relations were of such intimate nature that Mrs. Jacobs advised with him, solely, about the management of her affairs. Upon being informed by her of the receipt of this money upon the government claim, he represented that there was a flourishing manufacturing firm, or company, in the state of Ohio, which would pay eight per cent for the use of the money and deposit collateral security, and that, until the security came from Ohio, he would " give to her $14,000 of bank stock." Upon her objecting her ignorance about the Ohio concern, he offered to give her his note for the amount, in addition. This satisfied her as to security for the transaction and she, then, received the defendant's note and the bank stock. Thereafter, the defendant brought to her the security that he had said she would receive from Ohio and received back

his bank stock. Matters remained thus for several years, during which, as she testifies, when she would inquire as to the repayment of her loan by the Ohio concern, he would represent it to be "all right" and "good," and that he thought the company would pay her very soon. Each year the sum of $640, (being 8 per cent upon the principal sum), was paid to her and a receipt would be taken from her by the defendant, expressing the interest payment to have been upon his note. She testifies that the interest moneys were never actually sent to her; but that the defendant would inform her that her "interest had come" and that he would place it to her credit in the bank, and she signed the receipt asked for; either without reading it, or without giving any attention to its terms. She had lived in Ohio and she knew that loans could be lawfully made there at an interest rate of eight per cent.

The defendant testified that Mrs. Jacobs told him she was going to send the money west and that he offered to give her eight per cent interest for its use for a short time; which she consented to and, thereupon, the note in question was made. He denied making any representations that the Ohio company would take the money and pay her eight per cent, while they had it. He explained the delivery to her of the Ohio security and its substitution for his bank stock by the statement that he needed the latter to use at an annual bank election. He and Mrs. Jacobs were the only witnesses upon the trial and, as to what was the nature of the actual transaction between them, upon the making of this note, their testimony is in direct conflict. The question was submitted to the jury, upon the facts in evidence, whether the note was affected by an agreement of the defendant to pay interest upon it at the usurious rate of eight per cent per annum. The jury found for the plaintiff upon the issue; thereby establishing the material facts of the transaction between the litigants according to her version. Their verdict established that there was no agreement on the defendant's part to pay the plaintiff eight per cent for the use of her money and that

should have disposed of the case; but the Appellate Division has reversed the plaintiff's judgment, upon exceptions taken by the defendant to the rulings of the trial judge, and has ordered a new trial. But few of the exceptions raise any serious question and those to which our attention is mainly directed relate to the admissibility of Mrs. Jacobs' testimony as to her intention in making the loan of her money. Upon her examination as witness, she was asked this question:

" Now, Mrs. Jacobs, at the time that the note was given, did you intend then and there to make an illegal and corrupt agreement with Mr. Marvine?"

She was permitted to answer, over the defendant's objection to its competency, that she did not. She was then asked:

" So there was no intention on your part to loan it to him; that was not your understanding?"

She was permitted, over the defendant's objection to its competency, to answer in the negative.

The exceptions to the admission of this evidence are sought to be sustained upon the ground that it was incompetent for Mrs. Jacobs to testify as to an undisclosed intent in the transaction with the defendant, and that, in view of the sharpness of the controversy over the question whether she made a loan to the defendant, or whether she made it to an Ohio firm, or company, the admission of the testimony could not have failed to influence the jury. The majority of the learned justices of the Appellate Division took this view of the case and it must be admitted that the question is one as to which judicial minds might fairly differ. In our opinion, however, the circumstances of a case may justify such testimony and they were such here as to warrant the trial judge in permitting Mrs. Jacobs to answer the questions. The objection interposed was only as to the competency of the evidence called for by the two questions and, therefore, they may practically be considered together. Was it competent for Mrs. Jacobs to testify whether she intended to make a loan of her money to the defendant? It is necessary that the intention of the parties in such a transaction should be discovered, in order that the jury

may reach a determination as to its character. Did they intend to cloak their doings, so that an evasion of the statute should be concealed? If the plaintiff, in fact, made the loan to the defendant, then the transaction, and the note evidencing it, were tainted by usury and the defendant was entitled to defend upon the statute. But if she believed that her money had been loaned, through the defendant's agency, to parties in Ohio and that the defendant's note was given to her by way of assurance, or security, as to the safety of the loan, and she believed that the interest moneys placed to her credit came from the Ohio borrowers of her money, then there was no usurious agreement and a recovery upon the defendant's note could not be defeated upon that ground. The evidence of Mrs. Jacobs was sufficient, aside from that in question, to warrant the jury in deciding that she had no intention to make any loan to the defendant and her answers to these questions could have worked no harm. But we think that the evidence was admissible and that her answers were competent for the consideration of the jury, in connection with the other evidence, in passing upon the question of actual intent. (*Thurston* v. *Cornell*, 38 N. Y. 281.) The facts of the transaction were susceptible of an innocent construction and her intention was a material element, in determining whether they should be given that construction. The plaintiff's testimony, by adding that further item of evidence to her case, which the jury might consider, may be said to have completed it and the jury, being convinced of the truthfulness of the witness, would be the more aided in coming to a conclusion favorable to her upon the one question of fact in the case.

This is not to be likened to a case where the meaning of the written instrument is sought to be explained, or to be varied, by the evidence of a party's intention. The general rule of law forbids a party to a written contract from testifying to his understanding of it, or as to his intention. His undisclosed intention is not competent to be shown to bind the other contracting party. (*Rickerson* v. *H. F. Ins. Co.*, 149 N. Y. 307.) On its face, this note is a perfectly innocent and

valid instrument and it is only by resort to extrinsic facts and circumstances that it is invested with the elements and the atmosphere of illegality. According to the plaintiff's story, it was given to her as security against loss from a foreign investment made for her by the defendant. According to the defendant's story, it was made upon a loan of the money to him and in its innocent guise concealed an usurious agreement. Whether, then, the suspicious circumstances adduced by the defendant shall charge the plaintiff with having endeavored to evade the statute against usury, must largely depend ·upon what was her intention in this transaction; rendered obscure to the· understanding of the jurors through the acts of the parties and their conflicting statements upon ·the witness stand. The intention, or understanding, of Mrs. Jacobs in the transaction was material to be ascertained and we think that the rules of evidence were not transcended by permitting her to answer the questions objected to.

In *Thurston* v. *Cornell* (*supra*), the defense to the note was usury and it appeared that a certain sum had been reserved out of the principal of the note. The evidence was conflicting; the defendant claiming that the agreement was that he should pay a usurious rate of interest for the money loaned by the plaintiff; while the latter claimed that the reservation from the principal was as compensation for her services and expenses in collecting the money, necessary to complete the sum to be loaned, and that such services were rendered at the defendant's request and upon his express promise to pay her therefor. Upon the trial, the plaintiff was permitted to state what her intention was in stipulating for the extra compensation reserved and it was held in this court that there was no error in the ruling. It was said by Judge DWIGHT, in the opinion, that "whether it" (the amount reserved) "was intended as compensation for the loan, or as compensation for trouble and expense incurred in collecting the money to be loaned, was precisely the question of fact for the jury; and the law is now well settled, under the rule admitting parties to testify in their own behalf, that, where the character of the

transaction depends upon the intent of the party, it is competent, when that party is a witness, to inquire of him what his intention was." Later, in *Bayliss* v. *Cockcroft* (81 N. Y. 363), where the defense of usury was made to an action on a note, the question arose of the admissibility of the plaintiff's statement that he had no purpose or intention to evade the statute of usury. The evidence showed that the note in suit was transferred to the plaintiff with twelve other notes, which were business paper, at the same time and as one transaction, at a discount from the aggregate amount of the notes greater than legal interest. The question was whether the note in suit was delivered upon a corrupt and usurious agreement and whether the plaintiff reserved any usurious interest. It was held that the circumstances were such as to make the reception of the testimony proper, under the authority of *Thurston* v. *Cornell*. Chief Judge Folger said, in the opinion, "We do not encourage the reception of this kind of testimony; yet we know that parties have been permitted to speak as to their mental operations in the doing of an act that is called in question, where the intent with which it is done serves to characterize it." The case of *Dillon* v. *Anderson* (43 N. Y. 231) cannot be said to oppose our view. There the defendant had executed a contract with the plaintiff for the construction of boilers upon a steamboat, and in defense of the action to recover damages for breach of the contract, Anderson sought to establish that it was made with him and one Hasbrouck jointly, and that the latter was a necessary party. He was asked: "Did you intend to make an individual contract?" and the court overruled the question. The ruling was sustained in this court and Judge Folger observed, in speaking of the authorities which hold that a witness may be asked his intention in doing an act, "that where the doing of the act is not disputed, but is affirmed, and whether the act shall be held valid or invalid, hangs upon the intent with which it was done, which intent from its nature would be formed and held without avowal; there he upon whom the intent is charged may testify whether he secretly held such

intent when he did the act." *Dillon* v. *Anderson* was in mind and referred to in *Bayliss* v. *Cockcroft* by Judge FOLGER; who observed that it did not shake the authority of *Thurston* v. *Cornell.* The principle of the decision in *Dillon* v. *Anderson* is not applicable to such a case as this; for there the question was, whether it was Anderson's contract, or not, and his intention in executing it was utterly immaterial on that point. That was his written contract and he could not defeat its obligations by his evidence that he only intended to be bound if Hasbrouck became a party to it. The written instrument was the best evidence and all doubts as to its meaning were to be resolved by reference to its language and to the circumstances surrounding its making.

We think there was no error in permitting Mrs. Jacobs to answer the questions.

As to the other exceptions, which are relied upon to sustain the reversal of the judgment by the Appellate Division, we think none presented errors of a serious nature. With respect to them we agree with the views of Judge LANDON, dissenting at the Appellate Division. Very much of the evidence claimed to be irrelevant was called for by reason of the contradictory statements of the defendant as to his relations to Mrs. Jacobs' husband, and to herself, in her administration of his estate. It was the plaintiff's object to show that the defendant had sustained relations to them that were highly intimate and confidential, in business matters as well as socially, and that in her money transactions she rested upon his guidance and was warranted in trusting them to his management. If in the endeavor to accomplish this object the plaintiff adduced evidence of an irrelevant character, we find none that we can regard as having a tendency to improperly influence the jury.

For the reasons given, we think the order appealed from should be reversed, and that the judgment entered for the plaintiff upon the verdict should be affirmed, with costs.

All concur.

Order reversed and judgment accordingly.