THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THOMAS KELLY, Appellant.

Third Department, April 29, 1942.

*Samuel Levy*, for the appellant.

*Harold R. Soden, District Attorney*, for the respondent.

CRAPSER, J.   The defendant, Thomas Kelly, appeals from a judgment of conviction rendered after a trial by jury in the County Court of Essex County.   Defendant was indicted with one Lee Gordon Jaques, charged with the crime of burglary, third degree, and petit larceny.   Jaques entered a plea of guilty to the indictment before the commencement of the trial and testified during the trial as a witness for the People.   Kelly was sentenced to Clinton Prison at Dannemora for an indeterminate sentence of not less than two years nor more than four years.

Kelly and Jaques were charged with entering the boathouse of Frank Grisdale, who conducted a boat livery business at Lake Placid, during the night of July 26, 1940, and removing therefrom two outboard motors, and were also charged with taking an outboard motor from a boat docked outside of the boathouse.   These three motors were in evidence as People's exhibits.   Mr. Grisdale identified two as belonging to him and as having been taken from the boathouse, while Dean Anson identified the one taken from the boat outside of the boathouse as his property.

Kelly had for several years before his trial been employed as a State game warden in the Conservation Department and Jaques was a special game warden working under Kelly, being instructed in conservation work by him.

The sole evidence against Kelly consisted of the testimony given by Jaques and a letter written to Jaques and Kelly's confession. No witness was produced who saw them together on the night of the alleged crime or who gave any testimony connecting Kelly with the crime.   Two troopers after being notified by Grisdale went to Kelly's home and found a motor in his coal bin covered with a rain coat and a piece of canvas.   The motor was identified as one of those stolen on the night of July 26, 1940.

Mrs. Kelly, wife of the defendant, was sworn and testified that this motor was brought to the house by Jaques before he went to Bridgeport in Mr. Kelly's absence and that the rain coat in which it was inclosed did not belong to her husband.

Helen Pelkey was sworn as a witness for the defendant.   She worked at the Lake Placid Club as secretary to the publicity director and she had known the Kellys for a long time.   She said that she was at Kelly's house one night when Halsey Chase (who at the time of the trial could not be produced as a witness because he was in the United States Army) was there and she heard a conversation between Mr. Chase and Mr. Kelly about a motor.

She was asked: " Q. You were present in Kelly's house when there was a conversation between Mr. Kelly and Mr. Chase about a motor? A. I was. Q. Will you tell us what that conversation was? " The district attorney objected on the ground of hearsay evidence and the court said: " I think it is still hearsay." " Q. Did Mr. Kelly ask Mr. Chase to take a message to Mr. Jaques? " The district attorney objected and the court sustained the objection and Mr. Levy, the attorney for the defendant, said: " If it please the Court, I don't want to appear rude or anything but they have opened up a door and have a letter and the jury has read it. They say Kelly wrote it to Jaques."

Evidently this witness would have been able to give an explanation of that letter but was not permitted to do so on the ground that it was hearsay evidence.

Kelly was arrested on July 12, 1941, at six o'clock P. M., at his home in Lake Placid and he was detained by the troopers without being arraigned for twenty-four hours; they took him to the barracks for the purpose of getting a statement from him. The trooper in explaining the delay was asked these questions: " Q. How long did it take you to get his fingerprints? A. Fifteen minutes. Q. How long did it take to take his photograph? A. Ten or fifteen minutes. Q. What were you doing the other twenty hours. A. We were taking his statement. Q. That is why you brought him there? A. Yes, sir."

Four troopers, members of the State Police, were interested in the case and were given credit for it. A bondsman, his father-in-law, was there the night of his arrest to bail him out, but he was not given an opportunity. They went by the house of a justice of the peace after arresting him but they did not stop. He was not given anything to eat until quite late the next morning. There was no reason to hold him twenty-four hours without being arraigned except to get his fingerprints, photograph and statement. They took him to Elizabethtown at approximately one o'clock at night and put him in jail and came after him at about five in the morning.

Section 165 of the Code of Criminal Procedure provides: " The defendant must in all cases be taken before the magistrate without unnecessary delay, and he may give bail at any hour of the day or night."

There was a clear violation of the defendant's rights under this section by the four troopers who participated. It was a clear violation of the law and the troopers who arrested him and failed to take him before a magistrate as provided in section 1844 of the Penal Law were guilty of a misdemeanor.

The confession of Kelly was marked People's Exhibit V. It was sworn to before the district attorney of Essex county acting as notary public. When it was offered in evidence it was objected to and the court was requested by the defendant's counsel to pass on its admissibility as a matter of law. To this the court said that he would present to the jury the question as to whether the confession was obtained under fear of threats, and " I think it is a question [which] should be submitted to the jury. District Attorney: As to the motion resting on the law, what decision? The Court: That it be submitted to the jury. Mr. Levy: Exception. I object to its being offered in evidence   *   *   *   that the statement was obtained illegally and contrary to Mr. Kelly's constitutional rights.   *   *   *   The Court: I further state I will present the delay and that to be considered by the jury, the delay in taking him before the Justice of the Peace before arraignment."

In his charge to the jury the court said:

" There is in this case a confession made by the defendant.   *   *   *   A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless under the influence of fear produced by threats, or unless made upon a stipulation of the District Attorney that he is not to be prosecuted therefor. In this case, it is for you to decide whether there were any threats against the defendant Kelly when he made this confession. Was he under fear produced by threats? Or, did he make the confession without such force or fear? The reason for this in the law is the fact that under many circumstances persons might confess to a crime if they were being abused, starved, kept awake, or suffering from fear of any other bodily injuries.

" In this case, where is the fear? Of what was he afraid? It is not sufficient evidence, a confession, without additional proof, but such additional proof is only such evidence as will implicate the defendant in the crime. In this case, we have an accomplice, Lee Jaques, who has testified here as to the crimes."

The court did not present, by this charge to the jury, the question of delay in taking Kelly before the justice of the peace for arraignment as he announced he would in admitting the statement in evidence.

The defendant was arrested at six o'clock in the afternoon. He was not arraigned before a magistrate for approximately twenty-four hours. In submitting the question whether the alleged confession was voluntary as a question of fact they should have been instructed as to the statute providing for arraignment without unnecessary delay and they should have been told that they could

consider that in determining the weight which should be given to the confession and whether it was voluntarily obtained. ·

All the officers participating in this were guilty of oppression and neglect in violating the plain provision of the law in this respect which constituted of itself a crime. (Penal Law, § 1844.) Police officers have no discretion as to when a prisoner should be arraigned and the desire to obtain evidence of guilt through confessions furnishes no legal justification for delay, and detention for twenty-four hours before arraignment is illegal and though no record or inference that the confession obtained was involuntary, it has substantial bearing on such disputed question.

Where there is a substantial question of the voluntary nature of a confession taken while the defendant is in the custody of the police and arraignment is delayed, the trial judge has the duty, at least on the request of counsel, to charge that any unnecessary delay in arraignment is forbidden by law and should be considered by the jury. (Code Crim. Proc. §§ 165, 395; *People* v. *Alex;* 265 N. Y. 192; *People* v. *Cohen,* 243 App. Div. 245; *People* v. *Weiner,* 248 N. Y. 118.)

In the case of *People* v. *Mummiani* (258 N. Y. 394) Judge LEHMAN, writing for the court, said:

" Disregard of the duty of arraignment does not avail, however, without more to invalidate an intermediate confession. * * * It is only a circumstance to be weighed with others in determining whether a confession has any testimonial value. * * *

" A confession by a defendant can be given in evidence against him unless made under the influence of fear produced by threats or unless made upon a stipulation of the district attorney that he shall not be prosecuted therefor. * * * Other forms of pressure, not amounting to a threat, may be considered by the jurors in determining whether the confession is true or false. * * *

" We feel it a solemn duty, irrespective of the outcome of this cause, to remind the officers of the law that the suspicion now attaching to them has been fostered by their own conduct, at times by abuse of power, not amounting in itself to violence or coercion, but furnishing the soil out of which violence and coercion spring, at times by sheer indifference, a cynical refusal to inquire where relentless pressure of the probe would be likely to reveal too much.

" The police are guilty of oppression and neglect of duty when they willfully detain a prisoner without arraigning him before a magistrate within a reasonable time. (Code Crim. Pro. § 165.) The conclusion is inescapable that they do this for the purpose of subjecting him to an inquisition impossible thereafter. Until arraignment before a magistrate, he is held *incommunicado,* with-

out the protection that comes from the advice of counsel or the encouragement derived from the presence of family or friends. After arraignment, he has these and other helps to fortitude. In a vast majority of the cases that have come before this court with a defense that a confession was illegally extorted, perhaps, indeed, in all, the wrong, if there was any, was done before the prisoner was brought to court, and would probably have been prevented if he had been brought there without delay. (Cf. Lawlessness in Law Enforcement, vol. IV of the Reports of the National Commission on Law Observance and Enforcement, June, 1931.) "

The oppression practiced by the State troopers in unlawfully detaining the defendant Kelly without arraigning him before a magistrate within a reasonable time, the failure of the court to present the question of the delay in arraigning him to the jury and leaving it to the jury to determine the effect which should be given to Kelly's confession, the exclusion of the evidence of the witness Pelkey and the slight amount of evidence in this case make it impossible for me to agree to the affirmance of the judgment of conviction and I, therefore, vote to reverse the judgment of conviction and grant a new trial to the defendant in the interest of justice.

HILL, P. J., and BLISS, J., concur; SCHENCK and FOSTER, JJ., dissent and vote to affirm.

Judgment of conviction reversed on the law and facts and a new trial granted to the defendant in the interest of justice.