THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LAWRENCE REDMOND, Appellant.

Third Department, December 29, 1942.

*Gardner A. Callanen, Jr.,* for appellant.

*Clarence E. Conley, District Attorney,* for respondent.

HEFFERNAN, J. On March 9, 1942 the grand jury of Madison county returned four separate indictments charging defendant with the crime of arson in the third degree. One indictment accused him of burning a building belonging to one Austin on May 20, 1941; a second indictment accused him of burning a building belonging to one Wood on June 18, 1941; a third indictment charged him with burning a building owned by Jetter Dairy Company on August 15, 1941 and the fourth indictment accused him of burning a building belonging to Wood on September 25, 1941. Defendant was tried and convicted on the latter indictment and the other three were subsequently dismissed.

For some time prior to September 25, 1941, and on that day defendant, a boy eighteen years of age, and William Satterlee,

Jr., a boy fourteen years of age, were employed as farm laborers by Wood. About eleven forty-five A. M. on that day a barn belonging to Wood was destroyed by fire. Defendant and Satterlee were seen near this barn immediately before the fire. Unquestionably the fire was of incendiary origin and the State police instituted an investigation as a result of which Satterlee was arrested. He confessed that he and defendant not only burned this building but also the three other buildings to which reference has been made. After obtaining the confession from Satterlee two State troopers at two-thirty A. M. on October 2, 1941, arrested defendant at the home of his father and mother. The boy was in bed when taken into custody. The police officers informed the parents that their son was being taken to Hamilton for questioning. They were given no other information as to why the boy was being taken into custody. The boy was not taken to Hamilton but to the barracks at Oneida where he was held incommunicado for a period of fifteen hours until a confession was extracted from him. He was then arraigned before a justice of the peace and held to await the action of the grand jury.

On the trial Satterlee was produced as a witness and repeated the confession which he had made to the State police in which he implicated defendant in the burning of the various buildings. On his cross-examination he admitted that he had verified an affidavit for defendant's counsel to the effect that defendant was innocent, but said he did so because he had been told that otherwise defendant would be sent to prison for fifteen or twenty years. Satterlee pleaded guilty to the charge made against him and was committed to the Jefferson County Farm School at Watertown, N. Y.

While the evidence as to defendant's guilt is not entirely satisfactory we would not be inclined to reverse the judgment on the ground that the verdict is against the weight of the evidence. We think, however, defendant was not accorded the fair trial to which he was entitled.

While nominally on trial for burning the building referred to in the fourth indictment, on cross-examination, the district attorney was permitted to examine defendant in great detail regarding the burning of the other three buildings. Defendant in reality was being tried on the four indictments. We recognize that where a defendant offers himself as a witness in a criminal case he may be interrogated in regard to any vicious or criminal act of his life and may be required to make disclosures which tend to discredit or incriminate him. (*People* v.

*Webster*, 139 N. Y. 73.) The extent however to which disparaging questions not relevant to the issue but bearing on the credibility of a witness may be put upon cross-examination is discretionary with the trial court and its rulings are not subject to review unless it appears that the discretion has been abused. Here we think the court permitted the district attorney again and again to transcend the bounds of legitimate cross-examination. The questions of the district attorney clearly had the effect of showing that defendant was guilty of other crimes equally heinous with the one for which he was being tried. The whole purpose of the examination was to raise a presumption of defendant's guilt, the effect of which must have seriously predisposed the jury against him.

Defendant testified that while being taken to the barracks at Oneida and during the period of his unlawful detention he was assaulted by one of the arresting officers and that as a result of fear he finally signed a statement admitting his guilt. We would be gullible indeed were we to be influenced by the assertion of the district attorney that this confession was obtained without coercion. Prosecuting officials and police officers must be made to understand that convictions obtained by such sinister methods will not be sanctioned by us. The practice adopted by some police officials of arresting persons suspected of crime, holding them incommunicado, perpetrating acts of violence upon them, for the purpose of extracting a confession, is a scandal and a reproach to the administration of justice. Whatever arguments may be advanced to justify harsh treatment in the case of desperate criminals can have no possible application in this case where the police were dealing with a boy with no prior criminal record. After his apprehension defendant was entitled to be arraigned before a magistrate without unnecessary delay (Code Cr. Pro. § 165). The flimsy excuse given by the police for failing to so arraign him is that they were unable to contact the district attorney. The real reason for the unlawful detention was to force a confession of guilt from defendant. The failure of the arresting officers to comply with the plain provisions of the statute governing arraignment constitutes oppression on their part and makes them guilty of a crime. (Penal Law, § 1844; *People* v. *Mummiani*, 258 N. Y. 394; *People* v. *Alex*, 265 N. Y. 192; *People* v. *Cohen*, 243 App. Div. 245; *People* v. *Kelly*, 264 App. Div. 14.) In *People* v. *Mummiani* (*supra*), the Court of Appeals said that an officer who holds a prisoner in custody instead of promptly arraigning him before the nearest magistrate should be disciplined by his superiors and prosecuted

by the district attorney like any other malefactor and that the failure of a district attorney to initiate such a prosecution would subject himself to criminal accusation. That solemn admonition of the Court of Appeals was ignored by the arresting officers in this case. In justice to the district attorney it should be said that he did not participate in the unlawful practice.

Defendant also urges that the summation of the district attorney was inflammatory and highly prejudicial. Only portions of the address are printed in the record. We think some of the statements of the district attorney went beyond the bounds of legitimate argument. Unquestionably he was permitted an unwarranted license of tongue. We are convinced that in the interests of justice the judgment of conviction should be reversed on the law and facts and a new trial ordered.

HILL, P. J., BLISS, SCHENCK and FOSTER, JJ., concur.

Judgment of conviction reversed on the law and facts and a new trial ordered.