THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ISIDORE
COHEN, Appellant, et al., Defendants.

Third Department, April 28, 1943.

*Ellsworth Baker* for appellant.

*Robert O. Brink, District Attorney (Samuel W. Bernstein* of counsel), for respondent.

Hill, P. J. Appellant, Isidore Cohen, sometimes called Whiting, has been convicted of feloniously receiving property which had been stolen, under the fourteenth to and including the twenty-second counts of an indictment whereunder he and William J. O'Brien, who at times called himself "McCoy" were indicted. The indictment contained twenty-two counts. The District Attorney, at the close of the People's case, moved to dismiss the first, second, twelfth and thirteenth counts, and the jury acquitted appellant of the crimes of grand larceny charged in the third to and including the eleventh counts. O'Brien pleaded guilty at the opening of appellant's trial under conditions which the court deemed to require discussion in the charge.

Appellant purchased material belonging to The International Business Machines Corporation at Endicott, N. Y., on eight occasions in 1941, beginning April 2nd, the last December 15th. The circumstances as to each purchase did not vary materially, the last, which led to the arrest, will be discussed later. All of these purchases were made at the plant of the company, part from the employee in charge of scrap material, and part from O'Brien who was in charge of the "Returned Goods" or "Salvage" department. No criminality is charged in connection with the purchase of the scrap. Payment in cash was made both for the scrap and the salvage. The first transactions between appellant and O'Brien involved in the four dismissed counts of the indictment occurred at the latter's residence in 1940; one September 30th, the other October 23rd. The articles sold were of the same general character as those sold in 1941. Payments were made in cash and receipts taken, subscribed by some person other than O'Brien, he representing that he was acting as agent. On one of these occasions he exhibited to appellant a picture of himself taken with the president of the company, Mr. Watson, and told Cohen that he had helped Mr. Watson acquire certain real property and had trained dogs for him, indicating close friendship. O'Brien first denied these statements but later admitted that he made them, and said the picture was taken at one of the fields where the dogs were running. On each occasion in 1941 when appellant purchased goods, he first went to the general office of the company and obtained a pass permitting him to enter the enclosure. On the last occasion, Decem-

ber 15th, he purchased scrap of an employee St. John, who was then in charge of that department, for which he paid thirty-four dollars and seventy-five cents, and a large quantity of clocks and other devices, together with spare parts, from O'Brien. Most of these were in barrels. One of the barrels tipped over and a witness, Edward Lason, helped put the material back into the barrel. He and another employee, together with O'Brien, loaded the barrels and other material obtained from the salvage department upon Cohen's truck. After the barrels were loaded, O'Brien said, "That's all, boys" but Läson remained at a place where he .could see what thereafter transpired, which he describes: "Then he [O'Brien] came down the line with a small hand truck with a wood case recorder on it, covered with a cardboard box. He had this on the other side of the swinging door, and I recall this cardboard box which looked to me as if it was a new one, which of course aroused my suspicion — * * * I came back and I told my partner. * * * I left my partner inside the swinging door and came back, went over to where the truck was — Mr. O'Brien or Mr. Whiting didn't see me — they might have stopped me. * * * I looked and saw the two of them there with the small hand truck, and the two of them had the clock in their hands, and I proceeded on and I reported it to the guard." The guard went into the office to consult with an executive, and when Cohen returned to turn in his pass, after parking his truck on a side street, he was questioned. Ultimately the truck was returned and unloaded, and it is the theory of the People that all of the material except the $34.75 worth of scrap, was stolen property. It is unquestioned that appellant paid O'Brien $500 in the salvage department. The visibility into the place where the payment was made is in dispute. Lason who made the report that led to an examination of the truck had his suspicions aroused only as to one item "a wood case recorder" contained in a cardboard box. There were many barrels, which it is now claimed all contained stolen property, which did not arouse his suspicion while he and his companion were assisting in loading them. As earlier said, the other 1941 transactions varied little from the above, except that Cohen was permitted to continue on his journey with the scrap, and the salvage which he had purchased from O'Brien, but it is now asserted that all of the purchases from O'Brien in that year were criminal.

When a defendant, at the beginning of a trial and in the presence of the jury, pleads guilty of stealing property, the

presumption of innocence in the minds of the jurors in fact fades as to the other defendant jointly indicted for criminally receiving the property. The spectacle in this case apparently was quite forensic, as the court deemed it necessary to discuss the matter in his charge: " When the defendant William J. O'Brien plead guilty to the charges made against him in this indictment, such action on his part was voluntary. His plea of guilty at the time of the opening of the trial was done without any knowledge in advance on the part of the Court of his intention to plead to the indictment as he did, or the purpose which motivated him so to do, as the Court had made provisions to proceed with the trial of the two defendants * * *. I simply make this statement in fairness to the Court, so that you may be convinced, if you have any prejudice about it, you may remove it from your minds that there was any collusion on the part of the Court in regard to that plea which was entered by the defendant O'Brien." The People's case rests quite largely upon O'Brien's testimony. The trips to the plant were public and within the knowledge of the company's executives who issued passes to Cohen. O'Brien purported to be a close friend of the president; he was in charge of the salvage department and openly sold the articles to appellant which other and admittedly innocent employees helped to load on appellant's truck.

Appellant was arrested in the city of New York on the 29th day of December by the Chief of Police of Endicott, who went to New York accompanied by O'Brien who had then confessed but was not under arrest. Appellant was kept in the village lockup into the third day without being arraigned and was questioned by the Chief and a Lieutenant of Detectives, Wilson. A statement was obtained which is not an admission of guilt, but from which the People argue that such an inference may be drawn. It contains the following: " After he had been furnishing me with these clocks and machines at the plant several times, I began to get suspicious of him, and began to think O'Brien had no right to sell me the clocks. I spoke to O'Brien about this several times, and told him he had better watch his step." The detective Wilson goes even further in his testimony as to what Cohen said during this detention before arraignment: " Well, I asked Mr. Cohen a great number of things. I asked Mr. Cohen if there didn't come a time when he knew that these articles he was purchasing from O'Brien were stolen, and he said yes, he did." Among the requests to charge is the following: " I ask the Court to charge that a defendant taken into custody charged

with the commission, shall be promptly taken and arraigned before a Magistrate. By the Court: I decline to so charge. I don't think it would have any bearing upon the case, except in so far as the motive or something like that is concerned. By Mr. Baker: I had in mind that they take that into consideration in determining the circumstances under which the written statement was obtained.''

Appellant denies that he said he was suspicious that O'Brien was stealing the clocks, but says he became suspicious of the items sold to him at O'Brien's barn and that such statements as he made about suspicion related to the barn transactions where the receipt given by O'Brien was signed with the name Henan, and as to the clocks which O'Brien represented that he was obtaining from other persons. On September 5, 1941, O'Brien wrote appellant, '' Dear Whitey, I know a party that has six or seven hundred dollars worth of merchandise you can use. He would like to see you as soon as possible. Ask for me. The Real McCoy.'' Appellant was entitled to the charge requested. The Code of Criminal Procedure provides: '' The defendant must in all cases be taken before the magistrate without unnecessary delay, and he may give bail at any hour of the day or night.'' (§ 165.)

The opinion in *People* v. *Mummiani* (258 N. Y. 394, 400) calls attention that willful violation of section 165 of the Criminal Code is a crime, citing Penal Law, section 1841. The fact that appellant was held for more than forty-eight hours before arraignment had a substantial bearing upon the issue of whether he or the officers told the truth (*People* v. *Alex*, 265 N. Y. 192) and it was the duty of the Trial Judge to have charged the law on this subject. (*People* v. *Alex*, *supra*, 195; *People* v. *Cohen*, 243 App. Div. 245, 250.)

Appellant was not permitted to state in answer to questions by his counsel that he believed he was paying O'Brien full value for the articles purchased. His belief upon that subject was relevant as bearing upon guilty knowledge. Appellant's testimony as to his intent and belief was competent. (*Noonan* v. *Luther*, 206 N. Y. 105; *Davis* v. *Marvine*, 160 N. Y. 269.) His testimony would not have been conclusive on the subject, but it was competent.

The evidence as to the value of the property sold by O'Brien to appellant is indefinite. It indicates that the cost of these used items when new was about one-tenth of the retail price. The accountants of the company first made up a statement based upon the cost to the company, and thereafter it was changed

to the retail price for new articles. O'Brien testified from cards made up by some one else containing the retail values. This is not so important as to the charge of December 15th as to the others, as the agreed price of the articles on the last occasion was $500. The value of the articles as compared with the price paid by appellant is indicated by answers made by O'Brien: " Q. He tried to buy them as cheap as he could? A. At times. Q. He always tried to do that? A. He paid a very fair price at times. Q. He paid you what they were worth? A. From March 11, I think, they were better prices. Q. I asked you if he paid you what they were worth at times, in your judgment? A. Yes, sir. Q. Full price? A. The approximate value of them." The articles had been returned to the manufacturer for some reason, possibly obsolescence or wear. Upon another trial, more attention should be given to proof upon this subject.

The judgment of conviction should be reversed on the law and facts, and a new trial ordered.

CRAPSER and BLISS, JJ., concur; HEFFERNAN and SCHENCK, JJ., dissent on the ground that the proof establishes the guilt of the defendant beyond any reasonable doubt. The errors, if any, must be disregarded under section 542 of the Code of Criminal Procedure.

Judgment of conviction reversed on the law and facts, and a new trial granted.